UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| TIMOTHY J. NOLAN and | ) | |
| MARIE F. NOLAN | ) | |
| | ) | |
| Plaintiffs | ) | |
| | ) | |
| vs. | ) | C.A. No.: 02-12228-WGY |
| | ) | |
| ALLEN KRAJCIK; WILLIAM FULCHER; | ) | |
| STANLEY BATES; KEVIN PAICOS; and | ) | |
| THE TOWN OF EASTON | ) | |
| | ) | |
| Defendants | ) | |

## DEFENDANT, KEVIN PAICOS', REPLY BRIEF

### Response to Plaintiff's Statement of Additional Material Facts

24. Denied.  The statement does not accurately describe the cited testimony.  Paicos testified that whenever allegations are brought against the town, the allegations should be examined by the proper authority to determine the extent to which an investigation is necessary.

25. Denied.  The statement does not accurately describe the cited testimony.   Paicos testified that as part of fiduciary duty to the town, he avoids discussing potential claims that may create a financial threat to the town.

## I.    Vicarious Liability of Paicos

The plaintiff offers no legal argument in support of his vicarious liability/co-conspirator argument.  The plaintiff seeks to establish a conspiracy based upon comments made by Paicos following the town meeting.   The defendant fails to see how these post-town meeting comments in any way would contribute to a conspiracy.  Without more evidence of an actual conspiracy, summary judgment is appropriate.

## II.    First Amendment and Stigma Plus

The plaintiff offers no evidence in support of his stigma plus theory other than Paicos' post-meeting comments.  No evidence is offered that these comments are related to Krajcik stationing himself where he could observe the plaintiff at a subsequent town meeting as alleged by the plaintiff.

Where the alleged defamation and subsequent act come from two different sources (Paicos' comments and Krajcik's act of observing the plaintiffs), without evidence that the former act resulted in the subsequent act, it cannot be said to have caused the latter incident.  See Pendleton v. City of Haverhill, 156 F.3d 57, 63 (1998).    "As such, the allegedly defamatory remarks cannot be viewed as working a denial of a previously recognized right or status." Id.   Pendleton involved statements made by police officers which allegedly contributed to Pendleton's loss of employment.  Where as in this case, there is no evidence that Krajcik's later actions are attributable to Paicos' earlier statements, there is no liability with regards to Paicos.

It should also be noted that in Wisconsin v. Constantineau, 400 U.S. 433, 91 S.Ct. 507, 27 L.Ed.2d 215 (1971), the defamation plus in that case denied Constantineau the freedom to buy liquor within city limits.  The Chief of Police of Hartford caused a notice to be posted forbidding the sale of liquors to the appellee for one year.  This is a tangible loss of rights.

The plaintiff in this matter is still free to attend and vote at town meetings as the plaintiff acknowledges in his opposition.  He is still allowed to speak at town meetings and exercise his First Amendment Rights.

## III.   No Hearing / Sham Investigation

Paicos never testified that he "lied" about the Connelly letter.  Paicos testified that depending on the circumstances and to whom he was speaking to, it may be in the fiduciary interests of the town not to acknowledge a complaint against a town official or employee.  Paicos was simply balancing his duties as town administrator.

The plaintiff alleges that had Paicos disclosed that a complaint regarding the ejection of the plaintiff from the town meeting had been made, the board of selectman would have conducted an investigation.  This argument is speculative and ignores the fact that a copy of the Connelly letter was sent to the Fred Clark, Chairman of the Board of Selectman. See Exhibit A.  The Board of Selectman had notice of the complaint and any decision to investigate the incident would have been based upon knowledge of this complaint.


**IV.   Paicos is Entitled to Conditional Privilege for the Statement made at the Board of Selectman Meeting**

The statements of Paicos published in the Brockton Enterprise are privileged.  Statements made by public officials while performing their official duties are conditionally privileged. Mulgrew v. City of Taunton, 574 N.E.2d 389, 392, 410 Mass. 631, (1991).  The threat of defamation claims would otherwise prevent public officials from complying with official duties which include statements on public issues.  Id.  A conditional privilege allows such officials to speak openly regarding matters of public concern.  Id.

Paicos statements were made in his capacity of town administrator.  The statements were made at a board of selectman meeting.  See Exhibit N, ¶2 attached to Plaintiff's Opposition to Krajcik's Motion for Summary Judgment.   As in Mulgrew, the statements of Paicos served the public interest as the statements concerned the town's police department.

Massachusetts's courts have recognized that a person may possess a conditional privilege to publish defamatory material if the publication is reasonably necessary to the protection or furtherance of a legitimate business interest.  See Retailers Commercial Agency, Inc., petitioner, 342 Mass. 515, 520, 174 N.E.2d 376 (1961).  " Malice in uttering false statements may consist either in a direct intention to injure another, or in a reckless disregard of his rights and of the consequences that may result to him."  Id. at 521, quoting Gott v. Pulsifer, 122 Mass. 235, 239 (1877).

Once the defendant establishes that his statement is conditionally privileged, the plaintiff must establish that the defendant abused that privilege.  <u>Humphrey v. National Semiconductor Corp.</u>, 18 Mass.App.Ct. 132, 134, 463 N.E.2d 1197 (1984).  The plaintiff's burden of establishing abuse of conditional privilege is by "clear and convincing evidence".  <u>Landry v. Mier</u>, 921 F.Supp. 880, 888 (1996).

Paicos testified that as the town administrator, he has a financial duty to the town, which may have precluded him from acknowledging a complaint against the town, which ultimately may result in litigation and therefore economic exposure.  The statements of Paicos do not lend themselves to a reckless or knowing motive on his part to defame the plaintiff.  As stated in Paicos' motion for summary judgment, the statements concern the police department and do not identify the plaintiff.  As such, a reckless intent to defame the plaintiff cannot be imparted upon Paicos.

As the statements are protected by privilege, summary judgment is appropriate.

_____
Stephen M.A. Woodworth, BBO 534 330
John F. Gleavy, BBO 636 888
Attorney for Defendant, Town of Easton
Lynch & Lynch
45 Bristol Drive
South Easton, MA 02375
(508) 230-2500

# EXHIBIT A

Stanley Bates, Chief
Easton Police Department
Lothrop St.
North Easton, MA 02356

June 13, 2000
12:30 a.m.

Dear Chief Bates:

I am writing you to preserve my memory while fresh and to express my concerns concerning the events of a couple of hours ago at the June 12 town meeting.

Nearing the end of the meeting, I witnessed a disturbing altercation involving Easton resident, Timothy Nolan, and a man I do not know but assume to be an Easton resident based upon his presence in Town Meeting.

I was seated in the grandstands, three quarters of the way up, on the left side of the gymnasium as one enters from the high school. Mr. Nolan was at the microphone at the opposite side of the gym, and had remarked in his customarily pointed style concerning what he considered to be some uneven rulings on the part of the (Assistant) Moderator. More than one voice from the corner to my right shouted at Mr. Nolan to sit down. Mr. Nolan responded to the effect that who would make him sit down.

At that point, I observed a man in a blue jacket with gold shoulder piping leave where he had been standing at the door to my right, and circle the gym towards Mr. Nolan. As he turned from the end line up the sideline, the man's direction and purpose were so clear that I remarked to my wife, "Uh oh, that guy's going after Tim." Meanwhile, Mr. Nolan had finished speaking, was resuming his seat, clearly unaware of any danger or potential problem. Mr. Nolan actually had his back to the other man who approached him from behind. The other man initiated a confrontation positioning himself so close to Mr. Nolan that I could not tell whether or not the two were in physical contact. To this point Mr. Nolan had done nothing to provoke or instigate the confrontation. It was at around this time that you appeared to become aware of the developing situation and began moving towards the two men. The man remained in contact or near contact with Mr. Nolan who understandably pushed him away. I was unable to hear any of the conversation between the two men. From my vantage point, Mr. Nolan appeared to be acting defensively and reasonably in trying to establish some separation between himself and the man who accosted him.

There immediately followed a momentary jostle that was difficult for me to follow, but ended with Mr. Nolan being roughly dragged from the room, with someone's arm around his neck, by at least three or four people, including, it appeared, the man who had started the scuffle in the first place.

It is extremely disturbing and unacceptable to me, if anyone cannot express himself or herself freely and lawfully in our Town Meeting, without fear of being physically accosted. Tolerating conduct such as that displayed by the man in the blue jacket is antithetical to our basic freedom to participate in local democracy.

JUN-14-00 WED 09:06 AM   KENNEY & CONLEY, P.C.      FAX NO. 781 843 4216          P. 03/05

Moreover, from what I saw, I would have hoped that Mr. Nolan would have been protected and remained in the meeting, and the other man removed and otherwise sanctioned for so overtly interfering with the right of Mr. Nolan and thus anyone in the meeting to exercise our rights as voters without fear of physical intimidation or coercion. I am unaware of what occurred outside the gym or the outcome of the incident. I write in hope, however, that appropriate steps are taken against the proper person as a result of this event.

If you have any questions, please feel free to contact me. Thank you for your attention.

Very truly yours,

J. Michael Conley
37 Center St.
North Easton, MA

cc.   Kevin Paicos, Town Administrator
      Fred Clark, Chairman, Board of Selectman
      Richard Murphy, Brockton Enterprise
      Easton Journal